Maria D. DeLEON for Maria E. Sanchez, Plaintiff,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.

No. K86–274 CA.

United States District Court, W.D. Michigan, S.D.

Jan. 20, 1987.

Michigan Migrant Legal Assistance Project, Inc. by Janice R. Morgan, Berrien Springs, Mich., for plaintiff.

John A. Smietanka, U.S. Atty., W.D. Mich. by Daniel M. LaVille, Asst. U.S. Atty., Grand Rapids, Mich., for defendant.

OPINION

BENJAMIN F. GIBSON, District Judge.

This is an action pursuant to section 205(g) of the Social Security Act, 42 U.S.C.

---

§ 405(g), to review a final decision of the Secretary of Health and Human Services denying plaintiff's claim for surviving child's insurance benefits. The matter is now before the court upon the government's motion to dismiss for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1). After carefully reviewing the record and the parties' submissions and arguments, the court concludes that the motion should be granted.

Plaintiff DeLeon first applied for benefits on her daughter Maria's behalf on June 22, 1982. She claimed entitlement on the earnings record of deceased wage earner Ventura Sanchez, who was alleged to have been Maria's natural father. The case came before an Administrative Law Judge (ALJ), who ruled on April 28, 1983, that plaintiff had failed to show by a preponderance of evidence that Maria was Ventura Sanchez's child, or that Sanchez had made regular and substantial contributions to Maria's support as required by Social Security regulations. Consequently, survivors' benefits were denied. Plaintiff did not appeal the ALJ's decision.

On January 16, 1985 plaintiff filed a second application for child's benefits. A different ALJ dismissed her request for a hearing on December 11, 1985, holding that no ground existed to justify reopening of the first decision, and that the application involved the same issues, facts, and law as the earlier one, thus requiring application of administrative *res judicata.* The Appeals Council declined to review this ruling, and appeal was taken to this court.

The Secretary bases his motion to dismiss on *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1979). In that case the Supreme Court held that § 205(g) of the Social Security Act does not authorize judicial review of the Secretary's decision not to reopen a previously adjudicated claim for benefits. 430 U.S. at 107–08, 97 S.Ct. at 985–86. The Court explained its reasoning as follows:

> The pertinent part of § 205(g) provides: "Any individual, after any *final decision of the Secretary made after a hearing* to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days...." (Emphasis supplied.)

This provision clearly limits judicial review to a particular type of agency action, a "final decision of the Secretary made after a hearing." But a petition to reopen a prior final decision may be denied without a hearing as provided in § 205(b), 42 U.S.C. § 405(b) (1970 ed., Supp. V) [citations omitted]. Indeed, the opportunity to reopen final decisions and any hearing convened to determine the propriety of such action are afforded by the Secretary's regulations and not by the Social Security Act. Moreover, an interpretation that would allow a claimant judicial review simply by filing—and being denied—a petition to reopen his claim would frustrate the congressional purpose, plainly evidenced in § 205(g), to impose a 60–day limitation upon judicial review of the Secretary's final decision on the initial claim for benefits. 20 CFR § 404.951 (1976). Congress' determination so to limit judicial review to the original decision denying benefits is a policy choice obviously designed to forestall repetitive or belated litigation of stale eligibility claims. Our duty, of course, is to respect that choice.

*Id.* at 108, 97 S.Ct. at 985. The Court added, however, that in those "rare instances" where the Secretary's denial of a petition to reopen is challenged on constitutional grounds, the availability of judicial review will be presumed absent clear and convincing evidence that Congress intended the "extraordinary step" of foreclosing such jurisdiction. *Id.* at 109, 97 S.Ct. at 986.

Plaintiff first argues that *Sanders* does not control the present case because it applies only to decisions not to reopen, and not to applications of *res judicata.* She asserts that "these are separate and distinct issues governed by different law and different policy considerations." Plaintiff's brief at 5. She does not, however, point out what the policy differences are between a decision not to reopen and a deci-

sion to apply *res judicata.* These would appear to be functionally equivalent devices designed to invoke the finality of an earlier decision properly arrived at on the merits. In any case, this court need not ponder what the possible distinctions might be, because the Sixth Circuit has clearly held that the logic of *Sanders* extends to actions seeking review of the Secretary's denial of a hearing request on *res judicata* grounds. *Crouch v. Secretary of Health and Human Services,* 714 F.2d 139 (6th Cir.1983), *cert. denied,* 464 U.S. 898, 104 S.Ct. 252, 78 L.Ed.2d 238 (1983). *Accord, Coker v. Secretary of Health and Human Services,* 791 F.2d 931 (6th Cir.1986); *Bagby v. Harris,* 650 F.2d 836, 837 (6th Cir.), *cert. denied,* 454 U.S. 1087, 102 S.Ct. 647, 70 L.Ed.2d 623 (1981); *Parker v. Califano,* 644 F.2d 1199, 1201 (6th Cir.1981).

■ The cases cited by plaintiff do not contradict the Sixth Circuit rule. Rather, cases like *Thompson v. Schweiker,* 665 F.2d 936 (9th Cir.1982) and *McGowen v. Harris,* 666 F.2d 60 (4th Cir.1981) merely refine that general rule. These cases demonstrate the obvious proposition that the District Court has threshold jurisdiction to decide its own jurisdiction, and in this context that means jurisdiction exists to determine preliminarily whether *res judicata* was properly applied. However, once it is determined that application of the doctrine was legally correct, then the court lacks jurisdiction to review the Secretary's benefit denial. *McGowen,* 666 F.2d at 65. In the present case, plaintiff's 1985 application for survivors' benefits involved the same parties and resurrected the same claims and facts relative to Maria's relationship with Ventura Sanchez as were implicated in the hearing before the ALJ in 1983. Therefore, *res judicata* was properly applied by the Secretary, and absent any

constitutional objections by plaintiff, *Sanders* bars review of the Secretary's decision.

Not surprisingly, plaintiff next argues that even if the Secretary's application of *res judicata* was technically correct, his treatment of her 1985 application denied her due process of law, and the court therefore has jurisdiction under the constitutional exception to *Sanders.*[1] The court disagrees. Initially, plaintiff argues that the Secretary erred in failing to find on the evidence presented at the 1983 hearing that Maria was Ventura Sanchez's daughter. She does not, however, cite any case holding that she has a constitutional right to error free decision-making. The court has reviewed the ALJ's adverse ruling, and does not find that it was arbitrary, capricious, or patently unsupported by the record under *Thompson.* That is all the Constitution requires. If the 1983 decision was factually erroneous, that point should have been made on appeal, and not in the present suit.

Plaintiff tenders another, more complicated due process claim. This claim attacks the Secretary's 1983 holding that Ventura Sanchez did not contribute regular and substantial support to Maria within the meaning of 20 C.F.R. § 404.366. The ALJ, writing in the state of Texas, based that holding on a factual determination that Sanchez gave nothing to Maria or her mother from December 1980 until his death on June 6, 1982. Plaintiff does not argue that the ALJ applied § 404.366 incorrectly or that his interpretation was contrary to Fifth Circuit precedent at the time the case was decided. Rather, she directs the court's attention to Sixth Circuit authority holding that the "regular and substantial" contribution requirement of § 404.366 is inapplicable in cases where the parent or alleged parent was financially unable to

1. Plaintiff actually contends that the court should hold that *res judicata* was not properly applied in the first place, because the Secretary's initial adverse decision in 1983 was so clearly erroneous that it would be a manifest injustice to allow it to stand. This "manifest injustice" exception to the nonreviewability of benefit denials based on administrative *res judicata* was recognized in *Thompson,* 665 F.2d at 940–41. However, inspection of that decision reveals

that the holding that *res judicata* was improperly applied was based on the idea that "where the record is patently inadequate to support the findings the ALJ made, application of *res judicata* is tantamount to a denial of due process." *Id.* at 941. Therefore, the "manifest injustice" standard amounts to the same thing as the constitutional exception to *Sanders,* and the court will approach plaintiff's due process claims under the latter rubric.

make such contributions. *See* Soc.Sec.Rul. AR 86–15(6); *Childress v. Secretary of Health and Human Services,* 679 F.2d 623 (6th Cir.1982); *Parker v. Schweiker,* 673 F.2d 160 (6th Cir.1982); *Boyland v. Califano,* 633 F.2d 430 (6th Cir.1980). She asserts that Sanchez had indeed been financially incapable of contributing to Maria's support in the last eighteen months of his life due to the monetary burdens of his final illness. She also asserts that because her 1985 application for child's benefits was filed in the state of Michigan,[2] she was entitled to review of that application under the more lenient Sixth Circuit interpretation of § 404.366. Finally, plaintiff claims that the failure of the second ALJ, in reliance upon *res judicata* principles, to reconsider the question of Sanchez's contributions to Maria's support in accord with the Sixth Circuit authority noted above deprived her of due process.

The court does not dispute, as a general proposition, plaintiff's statement that failure to follow judicial precedent constitutes a denial of due process. Nevertheless, her argument is without merit. The fact that Sixth Circuit law applicable in 1985 may have differed from Fifth Circuit law applicable in 1983 is simply immaterial. The Secretary's 1983 decision in this case was completely consistent with the law at the time and place it was made. The court sees no reason why such a decision should not be given final, preclusive effect. To hold otherwise would allow plaintiff to re-litigate her benefit denial merely because she has moved from Texas to Michigan. If all disappointed claimants were permitted to defeat the *res judicata* effects of adverse ALJ judgments by filing new applications in different jurisdictions with arguably more favorable precedent, the finality of administrative action would be severely impaired, and the burden on the already sorely taxed Social Security Administration would be greatly increased. In the absence of any controlling authority cited by plaintiff, the court is unwilling to hold that the due process clause requires such results.

Plaintiff contends finally that jurisdiction exists in this case because the Secretary in fact reopened her earlier denial. A number of appellate courts have recognized a *de facto* reopening doctrine.

> [W]hen a claim is "reconsidered on the merits ... it is properly treated as having been reopened as a matter of administrative discretion. Consequently, the final decision of the Secretary denying such a claim is also subject to judicial review to the extent it has been reopened." [Citations omitted]

*Anderson v. Heckler,* 805 F.2d 801, 805 (8th Cir.1986). *See also Purter v. Heckler,* 771 F.2d 682, 692–93 n. 9 (3d Cir.1985) (an ALJ's actions constitute a *de facto* reopening of earlier claims where he subsequently denies benefits on the merits rather than ruling on the petition to reopen); *Taylor v. Heckler,* 738 F.2d 1112 (10th Cir.1984). The Sixth Circuit seems to have recognized the doctrine by implication. *Wilson v. Califano,* 580 F.2d 208, 212 (6th Cir.1978). In order to evaluate plaintiff's claim of jurisdiction under this doctrine, the foregoing cases make clear that the court must determine whether the Secretary at any time during his consideration of the 1985 application reconsidered or decided upon the merits of her claim for survivors' benefits. The court concludes that he did not.

Initially, it is significant to note that at every level of the administrative process—first consideration, reconsideration, the ALJ's opinion regarding the request for a hearing, and the Appeals Council's refusal to review the ALJ's decision—the Secretary explicitly based his rejection of the 1985 application on the grounds that the 1983 determination was final and binding and should not be reopened. Plaintiff nonetheless argues that the Secretary effectively reopened her denial at the reconsideration stage, based upon the following excerpt from the Notice of Reconsideration:

2. In her complaint plaintiff avers that she and her daughter reside in Bangor, Michigan. The government, however, asserts that they remained residents of Texas at the time the 1985 application was considered by the Secretary. The court will assume *arguendo* that the application was properly filed and handled in Michigan.

324

[V]arious documentary evidence was submitted which meets "other evidence" of less probative value which show the wage earner to be the biological father of the child. When "other evidence" is acceptable, such child may qualify for benefits *provided* (1) the wage earner was living with the child at the time of death or (2) the wage earner was contributing to the support of the child on a regular and substantial basis. The wage earner was not living with the child at the time of death and no payments for support of the child were made by him after December 1980 until his death in June 1982. Thus the dependency requirements were not met, so Maria did not meet requirements to qualify as a child of Ventura Sanchez.

This passage, plaintiff contends, represents a holding by the Secretary that Ventura Sanchez's paternity of Maria had been established. Since such a holding obviously differs from the 1983 determination that plaintiff had not established that Sanchez was Maria's father, plaintiff claims that the Secretary must have reconsidered the merits of the earlier finding and changed his mind regarding the legal relationship between Maria and Sanchez. Plaintiff's argument is logical, but it is based on a false premise: the quoted passage cannot fairly be characterized as the Secretary's admission that Ventura Sanchez had indeed fathered plaintiff's daughter. Rather, the phrase "evidence was submitted ... which show the wage earner to be the biological father of the child" refers only to the *purpose* behind plaintiff's various evidentiary submissions, which was to "show [Sanchez] to be the biological father." It does not indicate that the evidence was accepted by the Secretary as accomplishing its intended purpose. As for the rest of the quotation, it appears in context that the Secretary was merely attempting as a matter of courtesy to explain to plaintiff the legal rationale underlying her 1983 denial. The court does not read the quoted language as in any way re-examining the merits of plaintiff's benefit claim.

 Plaintiff having raised no colorable constitutional claims and shown no *de facto* reopening of her earlier benefit denial, the court concludes that it lacks jurisdiction to review her claim under § 205(g) of the Social Security Act. Plaintiff's allegation of jurisdiction under 28 U.S.C. § 1331 is also unavailing. *See* 42 U.S.C. § 405(h). Accordingly, the Secretary's motion is granted, and the complaint is hereby dismissed for want of subject matter jurisdiction.